UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA

| | |
|---|---|
| BILLIE R. ADAMS,                    )<br>                                                    )<br>             Plaintiff,              )<br>     vs.                             )       No. 1:06-cv-1499-SEB-JMS<br>                                                    )<br>CHRISTOPHER E. MELOY,                )<br>                                                    )<br>             Defendant.              )  | |

### Entry Discussing Motion to Dismiss

This cause is before the court on the plaintiff's complaint, on the defendant's motion to dismiss, on the plaintiff's response to the motion to dismiss, and on the defendant's reply.

Whereupon the court, having considered the foregoing complaint, motion and related materials, and being duly advised, finds that the motion to dismiss must be **granted.** This conclusion is based on the following facts and circumstances:

1.      Billie Adams ("Adams") is an Indiana prisoner. On September 16, 1972, Adams was convicted of two counts of first-degree murder and was sentenced to life imprisonment. *Adams v. State,* 314 N.E.2d 53 (Ind. 1974). Since his conviction, Adams repeatedly has been denied parole. Adams' seeks only injunctive relief in this action–relief in the form of a new parole hearing and an order that he be resentenced under the "new code." His claim initially proceeded only against the Chairman of the Indiana Parole Board. His custodian at the Correctional Industrial Facility, Superintendent Christopher Meloy, was later substituted as the defendant.

2.      The defendant challenges the legal sufficiency of the complaint pursuant to Rule 12(b)(6) of the *Federal Rules of Civil Procedure*. In ruling on a motion to dismiss under Rule 12(b)(6) of the *Federal Rules of Civil Procedure* for failure to state a claim upon which relief may be granted, the court must assume as true all well-pleaded facts set forth in the complaint, construing the allegations liberally and drawing all inferences in favor of the plaintiff. *E.g., Brown v. Budz*, 398 F.3d 904, 908-09 (7th Cir. 2005). Under the Federal Rules, a plaintiff pleads claims, not facts or legal theories. See *Vincent v. City Colleges of*

*Chicago*, 485 F.3d 919, 923 (7th Cir. 2007) ("a judicial order dismissing a complaint because the plaintiff did not plead facts has a short half-life."). However, while a complaint need not contain detailed factual allegations to survive a 12(b)(6) motion to dismiss, it is not enough merely that there might be some conceivable set of facts that entitle the plaintiff to relief. *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1964-65 (2007) (abrogating in part *Conley v. Gibson*, 355 U.S. 41 (1957)). Rule 8(a)(2) requires a plaintiff to state the grounds that entitle him or her to relief. This obligation "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 1965. Factual allegations must be enough to raise a right to relief above the speculative level, treating the factual allegations as true. *Id.* A claim also may be dismissed under Rule 12(b)(6) if it includes particulars that show the plaintiff cannot possibly be entitled to the relief he or she seeks. *Thomas v. Farley*, 31 F.3d 557, 558-59 (7th Cir. 1994). The court is not obliged to ignore any facts set forth in the complaint that undermine the plaintiff's claims, nor must the court give any weight to unsupported conclusions of law. *Northern Indiana Gun & Outdoor Shows, Inc. v. City of South Bend*, 163 F.3d 449, 452 (7th Cir. 1998) (quoting *R.J.R. Services, Inc. v. Aetna Casualty & Surety Co.*, 895 F.2d 279, 281 (7th Cir. 1989)).

       3.     Adams' claim is asserted pursuant to 42 U.S.C. § 1983. To state a claim under § 1983, a plaintiff must allege (1) that he was deprived of a right secured by the Constitution or laws of the United States and (2) that the deprivation was caused by a person acting under color of state law. *Flagg Bros., Inc. v. Brooks,* 436 U.S. 149, 155-56 (1978). "The purpose of § 1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails." *Wyatt v. Cole,* 504 U.S. 158, 161(1992). Subject matter jurisdiction over the claims is conferred by 28 U.S.C. § 1331.

       4.     "Section 1983 is not itself a source of substantive rights; instead it is a means for vindicating federal rights elsewhere conferred." *Ledford v. Sullivan,* 105 F.3d 354, 356 (7th Cir. 1997) (citing *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)). Accordingly, "the first step in any [§ 1983] claim is to identify the specific constitutional right infringed." *Albright v. Oliver,* 510 U.S. 266, 271 (1994). Adams invokes rights secured by the due process, equal protection, and *ex post facto* clauses of the United States Constitution.

       a.     Adams prudently eschews the argument that his right to due process has been violated because he has an entitlement to parole which has been violated. *Huggins v. Isenbarger,* 798 F.2d 203, 205 (7th Cir. 1986); *Averhart v. Tutsie,* 618 F.2d 479, 482 (7th Cir. 1980)("we hold that Indiana state prisoners do not have a protectible interest in being paroled"). Instead, he argues that his right to due process has been violated because the Parole Board's decisions have been arbitrary. This refinement is set forth on page 2 of Adams' *response to motion to dismiss* filed on June 27, 2007. Although it is not altogether clear that there is even a right to judicial review under the circumstances Adams describes, it is entirely clear that 1) such review would not be more demanding than the "arbitrary" standard recently referenced in *Thompson v. Veach,* 2007 WL 2566029 (7th Cir. September 7, 2007) (noting that there is "some authority" for the proposition that exceptionally

arbitrary governmental conduct may in itself violate the due process standard, whether or not a liberty or property interest is at stake)(citing cases), and 2) the actions of the Indiana Parole Board would easily satisfy this standard. This is evident from the Parole Board's consideration of Adams' applications for parole in accord with the governing statute, with the issuance of written decisions explaining its decisions, and with the exercise of the discretion clearly conferred on it by Indiana statute.

b.      The Equal Protection Clause requires that no state deny any person within its jurisdiction the equal protection of the laws. U.S. Const. amend. XIV. An equal protection violation occurs when the government treats someone differently than another who is similarly situated. *City of Cleburne v. Cleburne Living .Ctr.,* 473 U.S. 432, 439 (1985). "A person bringing an action under the Equal Protection Clause must show intentional discrimination against him because of his membership in a particular class, not merely that he was treated unfairly as an individual." *Herro v. City of Milwaukee,* 44 F.3d 550, 552 (7th Cir. 1995) (quoting *New Burnham Prairie Homes v. Village of Burnham,* 910 F.2d 1474, 1481 (7th Cir. 1990)). To state a claim under the Equal Protection Clause, a plaintiff must allege that a state actor intentionally discriminated against the plaintiff based upon his or her membership in a protected class. *Washington v. Davis,* 426 U.S. 229, 247-48 (1976). Adams, however, is not a member of a protected class, and "[i]t does not violate the equal protection clause to require people sentenced before 1977 to serve out their sentences under the system that was in place when they committed their crimes." *Huggins v. Isenbarger,* 798 F.2d at 207 (citing *Raimondo v. Belletire*, 789 F.2d 492, 497 (7th Cir. 1986)); see also *Shango v. Jurich,* 681 F.2d 1091, 1104 (7th Cir. 1982) (inconsistency in the operation of a prison does not, in itself, constitute a denial of equal protection).

c.      Adams also argues that there is an *ex post facto* violation at play with his suitability for release on parole being determined by procedures and guidelines established after he was sentenced. The "controlling inquiry" in determining whether a law violates the *Ex Post Facto* Clause is whether the retroactive application of such law creates "'a sufficient risk of increasing the measure of punishment attached to the covered crimes.'" *Garner v. Jones*, 529 U.S. 244, 250 (2000) (quoting *California Department of Corrections v. Morales,* 514 U.S. 499, 509 (1995)); *see also Lynce v. Mathis,* 519 U.S. 433, 442-44 (1997). When the change in state law "does not by its own terms show a significant risk, the [plaintiff] must demonstrate, by evidence drawn from the rule's practical implementation by the agency charged with exercising discretion, that its retroactive application will result in a longer period of incarceration than under the earlier rule." *Garner*, 529 U.S. at 255. *Morales* is instructive here. In that case, the Supreme Court explained that, in light of the framework it set forth in prior cases, "the focus of the *ex post facto* inquiry is not on whether a legislative change produces some ambiguous sort of 'disadvantage'"; rather, the proper focus is limited to whether the change in the law "alters the definition of criminal conduct or increases the penalty by which a crime is punishable." *Id.* at 506 n.3. The particular holding in *Morales* was that an

amendment to California's parole procedures which decreased the frequency of parole hearings for certain offenders had not changed the quantum of punishment attached to the petitioner's offense, and therefore was not *ex post facto.* This is the same type of change to Indiana's parole structure which Adams has confronted.[1] As in *Morales,* 514 U.S. at 508, the change here has not altered statutory parole eligibility standards and hence has not implicated the *Ex Post Facto* Clause of the Constitution.

5. A complaint is sufficient in stating a claim upon which relief can be granted only to the extent that it "'contain[s] either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory.'" *Bell Atl. Corp. v. Twombly,* 127 S. Ct. 1955, 1969 (2007) (quoting *Car Carriers, Inc. v. Ford Motor Co.,* 745 F .2d 1101, 1106 (7th Cir. 1984)). In the context presented here, the complaint is not sufficient, because without a predicate constitutional violation one cannot make out a *prima facie* case under § 1983. *Juriss v. McGowan,* 957 F.2d 345, 349 n.1 (7th Cir. 1992).

6. "Federal courts must take cognizance of the valid constitutional claims of prison inmates." *Babcock v. White,* 102 F.3d 267, 275 (7th Cir. 1996) (quoting *Turner v. Safley,* 482 U.S. 78, 84 (1987)). The plaintiff does not allege such a claim in this case, however. When a plaintiff "pleads facts that show his suit is time barred or otherwise without merit, he has pleaded himself out of court." *Tregenza v. Great American Communications Co.,* 12 F.3d 717, 718 (7th Cir. 1993), *cert. denied,* 511 U.S. 1084 (1994). For the reasons explained above, that is the case here. Based on the foregoing, the motion to dismiss is **granted.** Judgment consistent with this Entry shall now issue.

**IT IS SO ORDERED.**

Date: 09/17/2007

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

---

[1] Before 1979, no person sentenced to life in prison in Indiana was eligible for parole consideration. *White v. Indiana Parole Board,* 713 N.E.2d 327, 332 (Ind.Ct.App. 1999). In 1979, the legislature amended IND. CODE § 11-1-1-9.1, which for the first time provided parole eligibility to inmates serving a single life sentence. *White,* 713 N.E.2d at 332. That amendment also specifically denied the possibility of parole to any person serving more than one term of life imprisonment. *Id.* IND. CODE § 11-1-1-9.1 was repealed October 1, 1980, when IND. CODE § 11-13-3-2 became effective. IND. CODE § 11-13-3-2(b)(3) provides that a person sentenced to more than one term of life imprisonment is not eligible for parole consideration. In 1979, and through July 1, 1995, prisoners convicted of a single life sentence were eligible for initial parole consideration after the offender had served fifteen (15) or twenty (20) years imprisonment, depending on the crime. After 1979 but before 1995, an offender serving a single life sentence who was denied parole could be reconsidered in one (1) year. Effective July 1, 1995, IND. CODE § 11-13-3-3(k) was amended and offenders denied parole may be reconsidered not earlier than five years after the date of the hearing at which parole was denied, unless "special circumstances" exist for holding a hearing earlier.